Filed 12/18/15  In re H.H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| In re H.H., a Person Coming Under the Juvenile Court Law. | C079155 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. JD233547) |
| Plaintiff and Respondent, | |
| v. | |
| A.W., | |
| Defendant and Appellant. | |

A.W., the mother of the minor H.H., appeals from the juvenile court's order terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  She contends the court erred in declining to apply the sibling relationship exception to adoption.

We affirm.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On June 20, 2013, the minor (born May 2013) was placed in protective custody after mother was arrested on a no bail warrant and had no available caretaker for the child. The home where mother and the minor resided smelled of urine and feces. A small box containing marijuana was found on the floor in a place accessible to children.

Mother had an extensive child welfare history, which resulted in the termination of her parental rights as to two of the minor's half siblings. She also failed to reunite with the minor's three siblings, who were placed in guardianship in February and May 2013.

In July 2013, the Sacramento County Department of Health and Human Services (DHHS) filed a dependency petition (§ 300) alleging failure to protect, no provision for support, and abuse of siblings. Services were ordered for mother at a non-detaining hearing held later that month.

DHHS filed an amended petition in September 2013, adding allegations that mother had been residing with the minor's father, C.H., who had engaged in domestic violence with mother. Mother submitted to jurisdiction at the September 2013 jurisdiction hearing. The juvenile court ordered services and placed the minor with mother at the October 2013 dispositional hearing.

DHHS filed a supplemental petition (§ 387) in April 2014 alleging mother was allowing father in the home when the minor was present. The minor was detained later that month.

The April 2014 jurisdiction and disposition report noted the minor was placed with her siblings, who loved having her around. The foster mother, the guardian of the minor's siblings, expressed interest in guardianship should reunification fail.

The juvenile court sustained the allegations at the June 2014 jurisdiction and disposition hearing. The court bypassed reunification services pursuant to section 361.5, subdivision (b)(10) and (11).

In October 2014, DHHS filed a section 366.26 report that recommended guardianship with the current caregivers. The minor's development was below cutoff and she had been referred for services. She liked to be held by her caregivers and cried when she was put down unless she was near her siblings, with whom she enjoyed interacting. The minor would reach for her siblings and cry when they left the room. A service provider was working on reducing the minor's tantrums, as she cried excessively until being picked up.

The caregivers lived in a home on a large residential lot close to shopping, parks, and schools. The minor was included in family events and the caregivers wanted the minor to stay in the same home as her siblings. She was building significant shared common experiences with her siblings as a result of her placement. Being with the siblings was becoming a link to normalcy for minor. The caregivers were committed to a plan of legal guardianship for the minor and wanted her to remain in their home.

DHHS found the minor was adoptable but recommended guardianship so that she could remain with her current caretakers and keep living as a family with her siblings.

An addendum report related that before the placement with her siblings, the minor had at least monthly visits with them. The minor got excited when her siblings returned home from school; she would run to the door and greet them. She also tried to run down the street when she saw them return home from school. The siblings protected the minor and tried to help her, such as giving her a boost to get on the couch. The minor and her siblings recognized when someone in the sibling group was upset or not feeling well, and accordingly gave and received affection from one another. DHHS personnel saw the minor easily go to her siblings and caregiver, smile at one brother and pet his hair, bring a stacking toy to another brother and initiate play, and follow another brother when he left the room.

A therapist had worked with the minor since August 2014 to reduce clingy behaviors and excessive crying. The clingy behaviors subsided after the minor started

walking. The therapist found the minor was clearly bonded to her caregivers and siblings, and removing the minor from them would be adverse to her as a disruption in attachment.

Counsel for the minor argued in support of adoption at the section 366.26 hearing. No witnesses testified at the hearing. The juvenile court expressed concern about whether the siblings' guardians, who were 72 and 69 years old, could raise the minor until she was 18.

The juvenile court issued a written opinion denying the sibling exception and terminating parental rights. The minor was adoptable; DHHS assessed her as adoptable and no contrary evidence had been presented. The court found "some level of sibling relationship exists." However, as the minor was not yet two years old, "on a developmental level the relationship she has with anyone in her life thus far are a very small part of what must be considered over the remaining 16 years of her childhood." The court noted that the minor needed therapy for her crying and tantrums after being placed in the caregivers' home. The therapist's statements did not show that the minor would be harmed by severing the relationship with her siblings, but that the loss would be from severing her relationship with her sibling's guardians. Application of the sibling relationship is rare, "particularly when the proceedings concern a young child whose needs for a competent, caring and stable parent are paramount." A "much higher level of evidence" than the minor's "loving, affectionate and playful relationship" with her siblings was needed to establish the sibling relationship exception to adoption. Since such evidence was not present, the juvenile court declined to apply the sibling exception to adoption.

## DISCUSSION

Mother contends the juvenile court should have applied the sibling relationship exception to adoption. We disagree.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child . . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child. [Citation.]" (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) The party claiming the exception has the burden of establishing the existence of any circumstances which constitute an exception to termination of parental rights. (*In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1372-1373.)

Termination of parental rights is detrimental to the child when "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).)

There is a "heavy burden" on the parent opposing adoption under the sibling exception. (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 813.) "To show a substantial interference with a sibling relationship the parent must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child. Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952, fn. omitted.)

The legislative author of the sibling exception envisioned that its applicability would " 'likely be rare.' [Citation.]" (*In re L.Y.L., supra*, 101 Cal.App.4th at p. 950.) This language from the legislative history has been interpreted to mean "that the child's relationship with his or her siblings would rarely be sufficiently strong to outweigh the benefits of adoption." (*Ibid*.)

Mother emphasizes the minor's relationship with her caretakers, the sibling's guardians, asserting they demonstrated "a true and full commitment" to the minor. Mother also points out that they qualified as nonrelated extended family members,[2] making them "more than mere stranger nonrelatives." She takes exception to the juvenile court's alleged denigration of the guardians' age and the court's questioning of their commitment to the minor. In support of these points, she cites a case addressing the exception for adoption where a relative caretaker "is unable or unwilling to adopt the child because of circumstances that do not include an unwillingness to accept legal or financial responsibility for the child" (§ 366.26, subd. (c)(1)(A); *In re K.H.* (2011) 201 Cal.App.4th 406, 415), and a case from this court holding that the ages of paternal grandparents who were 58 and 61 were not a legal impediment to adoption. (*In re T.S.* (2003) 113 Cal.App.4th 1323, 1325-1326.)

These contentions are not relevant to the issue before us. There is no non-related extended family member exception to adoption. The only concern here is the minor's relationship to her siblings and whether severing that relationship through termination of parental rights would be so detrimental to her that it outweighs the benefits of adoption. The record does not establish this exception. An affectionate, loving relationship with siblings does not support the conclusion that severing the sibling bond will bring about the detriment necessary to establish the exception. The therapist's statements show some

---

[2] Section 362.7 defines nonrelated extended family member as "an adult caregiver who has an established familial relationship with a relative of the child."

6

detriment brought about by disruption but again, nothing so severe as to override the minor's interest in adoption.

The minor was not yet two years old at the section 366.26 hearing and had lived with her siblings only half her life. In such circumstances, finding the sibling exception is extraordinarily difficult. This case does not present such extraordinary circumstances and mother accordingly has failed to carry her heavy burden of establishing the sibling exception to adoption.

## DISPOSITION

The juvenile court's orders are affirmed.


      MURRAY      , J.


We concur:


     ROBIE     , Acting P. J.


     MAURO     , J.